UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MICHAEL GUTHRIE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-446 |
| | ) | (VARLAN/SHIRLEY) |
| RICHARD MCMAHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on defendants' Motion for Summary Judgment [Doc. 20], plaintiffs' Motion for Partial Summary Judgment [Doc. 26], defendants' Motion to Strike Plaintiffs' Late Filed Motion for Summary Judgment [Doc. 32], and Plaintiffs' Motion to Accept One Day Late Filed Exhibits and Memorandum to Plaintiffs' Motion for Summary Judgment [Doc. 38]. Plaintiffs filed a response in opposition to defendants' motion for summary judgment [Doc. 31] as well as a response in opposition to defendants' motion to strike [Doc. 38]. Defendants filed a response in opposition to plaintiffs' motion for partial summary judgment [Doc. 36] as well as a reply to their own motion for summary judgment [Doc. 37]. No other responsive papers were filed and the time for doing so has passed. *See* E.D. TN. LR 7.1(a), 7.2. For the reasons set forth below, the Court will grant plaintiffs' motion to accept late filings and defendants' motion for summary judgment, will deny defendants' motion to strike, and will deny as moot plaintiffs' motion for summary judgment.

**I.     Background[1]**

On February 23, 2008, plaintiff Michael Guthrie's (hereinafter, "Michael Guthrie") wife, Tina Guthrie, obtained an Ex Parte Order of Protection against Michael Guthrie in the Circuit Court of Jefferson County, Tennessee (hereinafter, the "Order"). The parties contend that the relevant parts of the Order provide that the petitioner/plaintiff is Tina L. Guthrie; that the minor children protected under the order are Kyla Guthrie and Erika Guthrie; that the respondent shall not commit or threaten to commit abuse, domestic abuse, stalking, or sexual assault against the petitioner or petitioner's minor children; and that respondent shall not telephone, contact, or otherwise communicate with the petitioner, directly or indirectly. It was signed by the Honorable Rex Henry Ogle.

Several days later, on February 27, 2008, Michael Guthrie left his place of employment, Volunteer Chevrolet, around noon to bring his daughters to work with him. At approximately 2:52 p.m., Tina Guthrie called the Sevier County Sheriff's Office regarding the Order. The Sevier County Sheriff's Office Dispatch notified the Sevierville Police Department of the call minutes later. Thereafter, Officer Brian Shiver responded to Tina Guthrie's call and met her at the Shell Mart on 66, which is across the street from Volunteer Chevrolet.

In responding to the call, Officer Shiver was provided a copy of the Order by Tina Guthrie. He read and observed that the Order applied to Tina Guthrie and her two children.

---

[1] The facts set forth herein are taken from the various filings of the parties [Docs. 25, 29, 31-1, and 36]. To the extent a fact is disputed, each party's position is noted.

He then called his supervisor, defendant Richard McMahan, to the scene. Plaintiffs assert that Officer Shiver had dealt "with maybe one" ex parte order of protection and called Officer McMahan to verify he was reading the Order correctly. Officer McMahan arrived at the scene and read the Order, observing that the "face of the document read 'Minor Children Protected Under this Order: Kyla Guthrie, Erika Guthrie.'" The officers interpreted the Order to mean that Michael Guthrie was not to be around his daughters. Plaintiffs assert that Tina Guthrie told Officer Shiver that she knew the children were at Volunteer Chevrolet, but that she could not get them because of the Order. Accordingly, Officers McMahan and Shiver entered Volunteer Chevrolet.

When the officers entered Volunteer Chevrolet, Michael Guthrie was assisting a customer. Michael Guthrie informed the officers that he knew why they were there and requested that he be allowed to finish with the customer. The officers allowed him to do so.

After Michael Guthrie was finished assisting the customer, plaintiffs assert that Michael Guthrie asked the officers into his office and closed the door. Officer McMahan informed Michael Guthrie that he was in violation of the Order. Michael Guthrie disputed this statement and informed the officers that he had discussed the Order with police officers from the Sevier County Sheriffs Department and his lawyer. Officer McMahan informed Michael Guthrie that his children's names were listed as "Protected Under this Order" and that he would be required to turn over the children so that the defendants could return them to their mother; otherwise, he would be arrested. Officer Shiver remained silent during this conversation.

Michael Guthrie threw his hands in the air and he informed the officers that they could take the children. Plaintiffs assert that Michael Guthrie then opened the office door and said "There they are. Take them and go." Mr. Guthrie told his oldest daughter, Kyla, to go with the officers and defendants assert that he also told her to go "have fun with it." Plaintiffs assert that Michael Guthrie told Kyla Guthrie he would have the situation "straightened out" and told her to "Go. Have fun." Both parties agree that Kyla Guthrie then argued with Officer McMahan. She also refused to go with the officers because she wanted to go with a friend instead. Plaintiffs allege that during this time period, Officer McMahan put his finger in Kyla's face and told her that she would go to "juvie" if she did not be quiet. Officer McMahan asserts that he never touched Kyla. Although she thought Officer McMahan's behavior was "rude," Kyla agreed to go to her mother.

Plaintiffs assert that Michael Guthrie asked Officer McMahan if they were "done" and the officer replied that "as far as I'm concerned, we are." They also assert that Officer McMahan then leaned over the counter, put his finger in Michael Guthrie's face, and said "I'll leave when I'm ready to leave. Do you understand me."

During the entirety of Michael Guthrie's encounter with the officers, he unsuccessfully attempted to call his attorney. After one such attempt, Michael Guthrie claims that his youngest daughter, Erika, laughed at him. Defendants dispute whether she laughed at her father. Michael Guthrie then told Erika that she could go with her mother and "not bring her smart ass back." After this comment, plaintiffs assert that Officer McMahan said "That's it. You're going to jail." Officer McMahan then arrested Michael Guthrie for

4

violation of the Order and disorderly conduct. The charges were voluntarily dismissed by the State of Tennessee.

Plaintiffs commenced this action against the City of Sevierville, Tennessee, Richard McMahan, individually and in his official capacity, and Brian Shiver, individually and in his official capacity, asserting violations of 42 U.S.C. §§ 1983, 1985, and 1988 as well as state law claims [Doc. 1]. Plaintiffs later filed a stipulation of dismissal stating that they were dismissing defendant City of Sevierville, Tennessee with prejudice and that plaintiffs' case would remain pending as to defendants Richard McMahan and Brian Shiver in their individual capacities only [Doc. 17]. As a result, the following claims set forth in the complaint remain as to the individual defendants: that they violated plaintiffs' fundamental right to due process guaranteed by the Fourteenth Amendment to the United States Constitution by arresting Michael Guthrie and taking custody of his children without due process of law; that they arrested plaintiff Michael Guthrie without probable cause or a warrant and violated his fundamental right to be secure in his person from unreasonable governmental intrusion pursuant to the Fourth Amendment to the United States Constitution; that they are liable for intentional infliction of emotional distress; and that they are liable for negligent infliction of emotional distress [Doc. 1].

Both plaintiffs and defendants now seek summary judgment. Defendants' motion for summary judgment submits that defendants are entitled to summary judgment on all issues raised against them [Doc. 20]. Plaintiffs' motion for partial summary judgment requests that the Court grant summary judgment on the issue of liability for defendants' violations of 42

U.S.C. § 1983 only [Docs. 26, 29, 31]. In addition to the motions for summary judgment, defendants seek to strike plaintiffs' motion for partial summary judgment, arguing it was untimely filed, and plaintiffs move the Court to accept their late filed exhibits and memorandum of law in support of their motion for partial summary judgment [Docs. 32, 38].

II.  **Motion to Strike Plaintiffs' Late Filed Motion for Summary Judgment and Plaintiffs' Motion to Accept One Day Late Filed Exhibits and Memorandum to Plaintiffs' Motion for Summary Judgment**

A. **Arguments**

Defendants request that the Court strike plaintiffs' motion for partial summary judgment [Doc. 32]. In support, defendants submit that dispositive motions were due on or before August 16, 2010 under the Scheduling Order, but that, at the "last possible minute," plaintiffs filed a motion to extend the time for which they could file a dispositive motion by two days [*Id.*]. Defendants did not object to the extension and the Court granted the motion [*Id.*]. Defendants argue that plaintiffs did not comply with either the Scheduling Order or the order granting an extension for two days [*Id.*]. Rather, they submit, plaintiffs gained a "strategic advantage" by filing a "bare bones" motion for summary judgment the day of the deadline and a memorandum in support the following day [*Id.*].

In response, plaintiffs do not challenge that the motion was untimely, but argue that the delay was a result of plaintiffs' attorney's excusable neglect and mistake and "in no way caused prejudice" to defendants [Doc. 38]. Plaintiffs submit that their attorney converted only the last page of the memorandum of law to a PDF document and filed such on the deadline [*Id.*]. Their attorney became aware of the mistake the following day and, within

6

thirty minutes, filed a corrected memorandum of law [*Id.*]. Plaintiffs also submit that their attorney attempted to file the attachments to the motion for summary judgment but did not complete the filing until four o'clock in the morning the day after the deadline because the PDFs were too large for the electronic filing system and he had to rescan them into smaller segments [*Id.*].

**B.    Analysis**

Where a party files a motion beyond a deadline established by the Federal Rules of Civil Procedure or by order of the court, the motion is governed by Rule 6(b)(1)(B). Rule 6(b)(1)(B) provides: "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." *See Dennis v. Sherman*, No. 1:08-cv-01055, 2010 WL 3928332, at *2 (W.D. Tenn. Oct. 4, 2010).

The Supreme Court has stated that the "excusable neglect" determination is an "equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (citing *Pioneer Invest. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). It is a "somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Invest. Servs. Co.*, 507 U.S. at 392. Factors to be considered in considering a motion under Rule 6(b) include: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

7

After considering these factors, the Court finds that plaintiffs failed to act because of excusable neglect. Plaintiffs' attorney attempted to file the documents before the expiration of the deadline, but he failed to do so because he encountered technical difficulties. Nevertheless, he made a good faith effort to remedy the problems associated with the filing and completed the filing the day after the deadline. In opposition, defendants have asserted nothing but a conclusory statement that they will be prejudiced as a result.

Although the Court does not condone late filings, it finds that there is good cause to extend the deadline for plaintiff to file a dispositive motion and consider the merits of such. Accordingly, Plaintiffs' Motion to Accept One Day Late Filed Exhibits and Memorandum to Plaintiffs' Motion for Summary Judgment [Doc. 38] will be **GRANTED** and defendants' Motion to Strike Plaintiffs' Late Filed Motion for Summary Judgment [Doc. 32] will be **DENIED**.

### III. Summary Judgment Motions

#### A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). The Court views the facts and all inferences to be drawn therefrom in the light most

favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.

### B. Plaintiffs' Constitutional Claims

Plaintiffs assert claims under the Fourth and Fourteenth Amendments of the United States Constitution. Although plaintiffs' claims are somewhat unclear, the parties have framed them as follows: that defendants arrested plaintiff Michael Guthrie without probable cause in violation of the Fourth Amendment; that defendants violated plaintiffs' fundamental right to due process guaranteed by the Fourteenth Amendment by arresting Michael Guthrie and taking custody of his children; and that Kyla and Erika Guthrie were unconstitutionally seized by defendants.

Defendants assert that they are entitled to qualified immunity on these claims and that the Court, therefore, should grant summary judgment in their favor [Doc. 25]. Plaintiffs have responded to this argument in opposition [Doc. 31-1], and defendants replied [Doc. 37]. If defendants are entitled to qualified immunity, then the parties' remaining arguments become moot. Accordingly, the Court addresses the issue of qualified immunity at the outset.

### 1. Applicable Law

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" and is "an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1986); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citation omitted). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (citation omitted). Under the doctrine, "[g]overnment officials who

perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Holzemer v. City of Memphis*, No. 09-5086, 2010 WL 3565501, at *4 (6th Cir. Sept. 15, 2010) (citations omitted).

A three-step analysis is employed in the Sixth Circuit for analyzing claims of qualified immunity: first, a court determines whether, "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred;" second, a court considers "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and third, a court determines "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Id.* (citations omitted). There is no requirement that the sequence of this inquiry be followed, *Holzemer*, 2010 WL 3565501, at *4 (citing *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 813, 172 L.Ed.2d 565 (2009)), and, if a plaintiff fails to establish any one element, then qualified immunity must be granted, *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation omitted).

When the defense is raised, it ultimately is the plaintiff's burden to prove that the defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). The initial burden, however, is on the defendant, who must come "forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Then, "the

11

burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.*

With respect to summary judgment motions, the Court must adopt plaintiff's version of the facts in analyzing whether qualified immunity applies. *Parsons*, 533 F.3d at 500 (citation omitted). Granting summary judgment on the basis of qualified immunity is not appropriate if there is a factual dispute involving an issue on which the question of immunity turns or if the undisputed facts show that a defendant's conduct did indeed violate clearly established rights. *Gardenhire*, 205 F.3d at 311 (citations omitted).

### 2. Analysis

In their arguments addressing qualified immunity, the parties have focused on the third part of the qualified immunity analysis, that is, whether defendants' actions were objectively reasonable [*See* Docs. 25, 31-1]. Accordingly, the Court may turn to this inquiry of the analysis and assume, without deciding that a constitutional violation occurred and that the violation involved a clearly established constitutional right of which a reasonable person would have known. *See Holzemer*, 2010 WL 3565501, at *4 (citing *Pearson*, 129 S.Ct. 808 (2009)). If, construing the facts in plaintiffs' favor, defendants' actions were objectively reasonable, then defendants are entitled to qualified immunity and summary judgment. *See Cranford v. McCall*, No. 2:07-cv-1024, 2008 WL 4877789 (S.D. Ohio Nov. 12, 2008).

As defendants point out, if Michael Guthrie's arrest was a reasonable mistake, then defendants may be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Probable cause determinations, even if wrong, are not actionable if they are nevertheless reasonable. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (citation omitted). "'[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Parsons*, 533 F.3d at 501. Reasonableness is a question of law to be decided by the trial judge. *Jeffers*, 10 F.3d at 381 (citation omitted).

The Court finds that a reasonable officer in defendants' position could have reasonably believed that their arrest of Michael Guthrie for either violation of the Order or disorderly conduct was lawful.

As for the arrest for violation of the Order, defendants' interpretation of the Order that Michael Guthrie was precluded from being in the presence of his children may have been incorrect, but, if it was, their interpretation was not unreasonable. Officer Shriver was first to review the Order and he had only reviewed "maybe" one such other order. Given this uncertainty, he called his supervisor, Officer McMahan to the scene. Officer McMahan read the Order, and after speaking with Tina Guthrie, determined that the children were protected under the Order. The Court has reviewed the Order and, although it may be questionable, it was not unreasonable for defendants to interpret the Order as prohibiting Michael Guthrie from being in the presence of his children. The children are listed within the section identifying the petitioner and states that they are protected; moreover, the Order states that

13

the respondent, Michael Guthrie, "shall not telephone, contact, or otherwise communicate with the petitioner, directly or indirectly."

Moreover, defendants did not unreasonably believe that Michael Guthrie was in violation of the portion of the Order that prohibited him from committing or threatening to commit abuse, domestic abuse, stalking, or sexual assault against the children given the language he used in speaking with his daughters and because of his physical actions. Specifically, Michael Guthrie threw up his hands, incited his oldest daughter, and cursed his youngest daughter. Officer McMahan testified that, in his experience, situations such as the one involved here often escalated into physical altercations [Doc. 36].

With respect to the arrest for disorderly conduct, defendants' actions were not unreasonable given Michael Guthrie's actions and language. The place of the arrest was a public place open for business and facts submitted by both defendants and plaintiffs demonstrate that Michael Guthrie became "ticked off" and upset and threw his hands in the air as a result. Moreover, it is undisputed that Michael Guthrie told his youngest daughter Erika "not to bring her smart ass back" and that his oldest daughter began fighting with Officer McMahan after Michael Guthrie told her to go "have fun" with her mother.

Plaintiffs' own summary of the facts points to portions of the depositions of the officers supporting the Court's conclusion that their conduct was reasonable [*See* Docs. 29, 31-1]. First, plaintiffs cite the deposition testimony of Officer McMahan:

> After some discussion about that is when he began to get belligerent, start yelling, throwing his hands up in the air, saying, "Just take them. Just take them both." And then he started inciting his oldest daughter: "No. Go. Go

have fun with it. Make her life miserable," suggesting that he make his wife's life miserable by her going and – and creating havoc.

Second, plaintiffs cite the deposition testimony of Officer Shiver:

The throwing of his hands up in the air; his attitude toward his daughter, telling his daughter "Go. Go. Make your mom's life hell"; then the attitude toward his youngest daughter, with him point his finger at her, telling her, you know, "Take your smart ass. Never come back"; and the tone of his voice, raising his voice and so forth.

Plaintiffs also submit that Officer McMahan felt that such was "over the top" and Michael Guthrie was "inciting [Kyla Guthrie] to make her mother's life hell," and that Officer Shiver thought Erika Guthrie would take her father's actions as a threat because he was three to four feet from her and pointing his finger.

Plaintiffs, moreover, cite no case law supporting their argument that defendants' actions were objectively unreasonable. Indeed, with respect to the arrest for violation of the Order, the Court notes that case law outside of this Circuit suggests defendants' actions were objectively reasonable. *Compare Beier v. City of Lewiston*, 354 F.3d 1058 (9th Cir. 2004) (finding that officers were not entitled to qualified immunity where arrest for violation of a protective order was based on mistaken belief that plaintiff was in violation of the order and the officers failed to read or ascertain the contents of the order even thought it was readily available) *with James v. Adams County, Idaho*, No. 04-429-S-EJL, 2006 WL 538855 (D. Idaho Mar. 3, 2006) (finding officer's belief that probable cause existed to arrest plaintiff for violating the terms of a protective order was objectively reasonable because the officer

15

contacted dispatch twice to ascertain the terms of the order and to clarify his understanding with the judge who issued the order).

With respect to plaintiffs' Fourteenth Amendment claims, defendants are correct that an alleged violation of a constitutional right relating to a seizure and subsequent arrest is properly analyzed under the Fourth Amendment, not the Fourteenth. *Henderson v. Reyda*, 192 Fed. Appx. 392, 2006 WL 2220981, at *3 (6th Cir. 2006). As noted above, with respect to Michael Guthrie's Fourth Amendment claims, the Court finds that plaintiffs fail to demonstrate that defendants' actions were objectively unreasonable.

To the extent plaintiffs argue that Kyla and Erika Guthrie were "seized" or taken without due process of law, the Court questions whether defendants violated a clearly established right, including one of familial association as suggested by plaintiffs, but again finds that plaintiffs fail to demonstrate that the officers actions were objectively unreasonable. Assuming plaintiffs' version of the facts, that Officer McMahan touched Kyla Guthrie and told her he would take her to "juvie" if she did not go with him to her mother, the undisputed facts demonstrate that Kyla Guthrie was fighting with Officer McMahan prior to him doing so. The officers were there to return the children to their mother and it appears that the children were with the officers only long enough for them to be escorted across the street. Moreover, the deposition testimony of the children establishes that they did not have an issue with either officer, except that Kyla Guthrie thought Officer McMahan was "rude."

In sum, the Court finds that defendants are entitled to qualified immunity. Plaintiffs have not demonstrated that defendants' actions were objectively unreasonable based on facts

known to them at the time of the incident and the totality of the circumstances. Accordingly, plaintiffs' constitutional claims will be dismissed.

### C. Plaintiffs' State Law Claims

As the Court finds that defendants are entitled to qualified immunity and that plaintiffs' constitutional claims should be dismissed, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citation omitted). Accordingly, they will be dismissed as well.

## IV. Conclusion

For the foregoing reasons, the Court will **DENY** defendants' Motion to Strike Plaintiffs' Late Filed Motion for Summary Judgment [Doc. 32], will **GRANT** Plaintiffs' Motion to Accept One Day Late Filed Exhibits and Memorandum to Plaintiffs' Motion for Summary Judgment [Doc. 38], will **GRANT** defendants' Motion for Summary Judgment [Doc. 20], and will **DENY AS MOOT** plaintiffs' Motion for Partial Summary Judgment [Doc. 26]. This case will be **DISMISSED**. The Clerk of the Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE